**MARSHALL DURBIN, TUPELO, INC., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO–CLC, LOCAL 1529, Defendant.**

**No. EC86–179–S–D.**

United States District Court, N.D. Mississippi, E.D.

May 5, 1987.

Henry T. Arrington, Charles A. Adams, Jr., Theresa M. Gallion, Kullman, Inman, Bee & Downing, New Orleans, La., for plaintiff.

Roger K. Doolittle, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

SENTER, Chief Judge.

Cross-motions for summary judgment have been filed by the parties to a collective bargaining agreement. The dispute centers around work rules implemented by the employer and the discharge of an employee for alleged violation of those rules. Upon review of the record in this case, the court finds that summary judgment in favor of the plaintiff is appropriate.

### I. FINDINGS OF FACT.

Marshall Durbin, Tupelo, Inc. (hereinafter "Marshall Durbin" or "company") is a Mississippi corporation which maintains offices and a poultry processing facility in Tupelo, Mississippi. It is an employer within the meaning of section 301(a) of the National Labor Relations Act and is engaged in an industry affecting commerce within the meaning of the Act.

Defendant United Food and Commercial Workers International Union, Local 1529 (hereinafter "Local 1529" or "union") is a voluntary association and a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185 and at all times material hereto has been and is now the recognized collective bargaining agent for various employees at Marshall Durbin's facility in Tupelo. Marshall Durbin and the union are parties to a collective bargaining agreement.

In July, 1985, Marshall Durbin established and implemented certain work rules at its Tupelo facility. Article XI, paragraph 2.G. of the collective bargaining agreement, which describes certain rights retained by management, provides that the term "rights of management" includes the following, "the exercise of which by the Company is not subject to prior discussion or negotiation with the Union during the term of this Agreement: ... The establishment, modification, or enforcement of plant rules or regulations."

On or about May 14, 1986, Cynthia Mayfield was discharged as an employee of the

company for an alleged violation of the attendance policy as contained in the work rules.

On June 2, 1986, plaintiff's corporate representative, James Gordon, received from counsel for the union correspondence indicating that the union desired to arbitrate both the discharge of Mayfield and the implementation of the work rules. In response, the company initiated this action requesting this court to stay such arbitration and to enter an injunction enforcing the terms of the collective bargaining agreement. Specifically, plaintiff seeks a ruling that the implementation of new work rules is not subject to arbitration. The defendant union filed a counterclaim to compel arbitration of the work rules and the discharge of the employee.

A "grievance" is defined in the agreement as a dispute with respect to the alleged violation of a specific provision of the collective bargaining agreement. Article IV of the agreement requires filing "in writing" a grievance specifying that portion of the contract allegedly violated "within five (5) working days following the occurrence of the event which gave rise to the grievance. If the grievance is not presented in writing within the time limit prescribed, it shall be considered finally settled and waived."

On Monday, June 2, 1986, plaintiff's corporate representative, James M. Gordon of Birmingham, Alabama, received from counsel for defendants correspondence purporting to be a request for arbitration of the implementation of the new work rules. *See* affidavit of Theresa M. Gallion, ¶¶ 3 & 4. The company filed this complaint on June 12, 1986. Article V, ¶ 4 of the collective bargaining agreement provides that in the event either party has asserted that the dispute contained in a request for arbitration is not arbitrable, that party must move in court to stay arbitration within ten days after receipt of a request for arbitration.

Presently before the court are cross-motions for summary judgment.

## II. CONCLUSIONS OF LAW.

Jurisdiction is conferred on this court by 29 U.S.C. § 185(a), 28 U.S.C. § 1337, and 28 U.S.C. § 2201.

In the recent case of *AT & T Technologies v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court, guided by the *Steelworkers Trilogy* of 1960,[1] reiterated the principles that govern the arbitrability of grievances under collective bargaining agreements. The cornerstone of these principles is that the duty to submit a dispute to arbitration arises from contracts. Therefore, a party cannot be compelled to arbitrate a dispute if he has not agreed to do so. *Communications Workers*, 475 U.S. at ——, 106 S.Ct. at 1418, 89 L.Ed.2d at 655.

The second principle is that the question of whether the parties agreed to arbitrate a dispute is to be decided by the court, not the arbitrator. *Id.* 475 U.S. ——, 106 S.Ct. at 1418, 89 L.Ed.2d at 656. The third principle is that courts should not determine the merits of the underlying grievance, even if it appears to be frivolous. *Id.* The court is only to determine whether the grievance is arbitrable.

The fourth and final principle is that when a contract contains an arbitration clause, there is a presumption of arbitrability unless the court determines "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* 475 U.S. ——, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–57 (citations omitted); *see also Oil, Chemical and Atomic Workers' International Union v. Chevron Chemical Co.*, 815 F.2d 338, 339–41 (5th Cir.1987);

---

1. The *Steelworkers Trilogy* is the common name for the cases in which the Court developed the modern law of labor arbitration: *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960);

and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *See generally* Note, Arbitration After *Communications Workers:* A Diminished Role?, 100 *Harv.L.Rev.*, 1307, 1307–25 (April, 1987) (examining the ramifications of the judicial role in the arbitration process).

*International Chemical Workers v. Day & Zimmermann, Inc.*, 791 F.2d 366, 368–69 (5th Cir.1986).

Article XI of the collective bargaining agreement in the action *sub judice* describes the rights of the company, the exercise of which is not subject to prior discussion or negotiation with the union. The rights of management include the "establishment, modification, or enforcement of plant rules or regulations." Article XI, ¶ 2.G. The clause further provides that in the event of any ambiguity between that provision and another provision of the agreement, then the terms of Article XI will control. Article XI, ¶ 6.

■ The court is of the opinion that the clear language of the collective bargaining agreement indicates that the parties did not intend to arbitrate the implementation of work rules at the Tupelo facility. The court is guided by the reasoning of the court of appeals in *International Ass'n of Machinists v. Intercontinental Mfg. Co., Inc.*, 812 F.2d 219 (5th Cir.1987). The employer in that case discharged four employees for violation of a company rule prohibiting "bringing, possessing or using intoxicating liquors ... on company premises." The employees admitted the violation. The union submitted a written grievance to the company contesting the discharges. The company refused to submit the dispute to arbitration, asserting that the collective bargaining agreement did not require arbitration of the dispute. The agreement listed the rule on alcohol as a "Group III" rule and provided that an "employee may be discharged for violation of Group III rules." *Id.* at 220. The union argued that the contract required that the company have "good cause" to discharge an employee, even when the employee admittedly violated a Group III rule, and that the dispute should be submitted to an arbitrator. *Id.*

The district court granted the employer's motion for summary judgment, and the Fifth Circuit Court of Appeals affirmed. The court of appeals concluded that the contract did not support the union's argument that the company must have "good cause" in addition to a violation of a Group III rule before a discharge was permissible. The court further concluded that there was no indication in the contract or the record that the parties intended to arbitrate the discharges in that case. The presumption of arbitrability was overcome by the language and overall structure of the contract. *Id.* at 221–22.

The clear, unambiguous language of paragraph 2.G. of Article XI of the contract in this action dispenses with any duty to bargain or any right of arbitration in connection with the implementation of work rules by the company. Thus, there is no genuine issue of material fact as to whether implementation of the work rules by the company was intended by the parties to be arbitrable.

The union contends that the company has waived its right to move in this court to stay arbitration. As grounds therefor, it cites Article V, ¶ 4 of the collective bargaining agreement which provides that in the event either party has asserted that the dispute contained in a request for arbitration is not arbitrable, then that party must move in court to stay arbitration within ten days after receipt of a request for arbitration. On May 27, 1986, the union announced its request for arbitration and notified Greg Quinn, personnel manager at Marshall Durbin, Tupelo, Inc., and Jim Gordon, a company representative in Birmingham, Alabama. Quinn received the union's request for arbitration on May 29; Gordon received the union's request for arbitration on June 2. The complaint in this action was filed on June 12. If the ten-day period began running on May 29 when Quinn received the notice, then the complaint was untimely. If, on the other hand, the ten-day period began running on June 2 when Gordon received the notice, then the complaint was timely filed. The issue, therefore, is the date on which the ten-day period began to run.

■ Counsel for Marshall Durbin has submitted an affidavit in which she states that counsel for the union was advised that the ten-day period would run from receipt of the union's request for arbitration by James Gordon, Marshall Durbin's corporate

director of employee relations. *See* affidavit of Theresa M. Gallion, ¶¶ 3 & 4. The union has submitted no affidavit or other evidence to dispute this. Accordingly, the court concludes that Gordon was the appropriate company representative, that the ten-day period began to run on June 2 when Gordon received notice of the union's request for arbitration, and the complaint was timely filed. *See Bordelon v. Block*, 810 F.2d 468 (5th Cir.1986) (response to properly supported motion for summary judgment must show that there is a genuine issue of fact concerning an essential element of claim); *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir.1986) (party opposing motion for summary judgment must make sufficient showing on essential element of case to establish genuine dispute); *Rayborn v. Mississippi State Bd. of Dental Examiners*, 776 F.2d 530, 532 (5th Cir.1985) (party resisting summary judgment must file affidavits to show genuine issue of material fact).

It is undisputed that the work rules were implemented in July, 1985, and that the union did not formally object thereto until May or June, 1986. As noted, Article IV, ¶ 2 of the collective bargaining agreement provides that a grievance challenging the occurrence of the event which gave rise to the grievance must be presented in writing within five working days of the occurrence. If the grievance is not presented in writing within the time limit prescribed, it is considered finally settled and waived.

The union argues that implementation of the work rules constitutes a continuing violation of the agreement such that any dispute regarding the rules would begin a new time frame.

■ The court is of the opinion, however, that the union's interpretation would eviscerate the plain, unambiguous language of the agreement. Accordingly, the court concludes that the union's challenge to the implementation of the work rules is untimely under the agreement.

The union has filed a counterclaim seeking a determination that the discharge of Cynthia Mayfield, an employee of Marshall Durbin, is arbitrable.

Counsel for Marshall Durbin has represented to the court that the company agrees that the Mayfield discharge is arbitrable and that the company does not challenge the arbitrability of that issue. Accordingly, the court finds that there is no genuine issue of material fact as to the arbitrability of the discharge of Mayfield. *See Oil Workers*, 815 F.2d at 340–41 (parties agreed that grievance alleging wrongful dismissal was arbitrable).

Finally, both parties have moved for sanctions pursuant to Fed.R.Civ.P. 11. Defendant contends that the complaint has no legal or factual basis. Plaintiff seeks attorneys' fees and sanctions for defendant's alleged contumacious conduct.

A lengthy discourse on the history and purpose of rule 11 is unnecessary here. For a more complete analysis of rule 11 in practice, see Note, *Plausible Pleadings: Developing Standards for Rule 11 Sanctions*, 100 *Harv.L.Rev.*, 630, 632–51 (Jan. 1987). It is sufficient here to state that the rule provides for sanctions against an attorney who signs a pleading, motion, or other paper that to the best of his knowledge after reasonable inquiry is not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Revised rule 11 imposes an objective, rather than subjective, standard of reasonableness. *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987); *Davis v. Veslan Ent.*, 765 F.2d 494, 497–98 (5th Cir.1985).

The Fifth Circuit's most recent pronouncement on the issue of sanctions is *Thomas v. Capital Security Serv., Inc.*, 812 F.2d 984 (5th Cir.1987), in which the court concluded that in each instance where rule 11 sanctions are requested, the district court must make findings of fact and conclusions of law on each requirement of rule 11, namely: (1) whether reasonable inquiry into the facts was made; (2) whether reasonable inquiry into the law was made; (3) whether the action was taken to harass, delay or increase unnecessarily costs of litigation; and (4) whether an attorney has met his continuing obligation to reevaluate

his litigation position. *Id.* at 989. The court emphasized that the district court must make findings and conclusions on all four requirements of rule 11. *Id.* at 990.

### A. *Inquiry into the Facts.*

█ In deciding whether a reasonable inquiry into the facts has been made, the circumstances of the particular case will of course control, but the district court may consider such factors as how much time for investigation was available to the signer; how much the attorney had to rely on his client for the factual support for the document; whether prefiling investigation was feasible; whether the signing attorney accepted the case from another member of the bar or a forwarding attorney; the complexity of the factual and legal issues in question; and the need for discovery to develop the factual circumstances underlying the claim. No one factor is determinative, and other factors may be considered. *Thomas,* 812 F.2d at 988 & n. 1.

#### 1. The Union's Motion for Sanctions.

█ Marshall Durbin implemented the work rules at the Tupelo facility in July, 1985. Cynthia Mayfield was discharged from employment at Marshall Durbin in May, 1986, and the company filed this complaint in June, 1986. The court is of the opinion that the company had sufficient time to conduct an investigation into the facts underlying the complaint and motion for summary judgment.

The record indicates that counsel for Marshall Durbin had to rely on her client and its agents for the factual support underlying the complaint and motion for summary judgment. The court further finds that pre-filing investigation was feasible. There is no indication that counsel for Marshall Durbin accepted the case from another member of the bar or a forwarding attorney.

The issue in this action is whether implementation of work rules and the discharge of an employee are arbitrable under the provisions of the collective bargaining agreement. The facts and law underlying these issues are well settled and not com-

plex, and little discovery was necessary to develop the circumstances underlying the claim. Upon review of the record, the court is of the opinion that plaintiff's counsel's inquiry into the facts was not unreasonable and not in violation of rule 11.

#### 2. The Company's Motion for Sanctions.

█ The union filed its counterclaim and motion for summary judgment in July, 1986. The period of time that elapsed between implementation of the work rules and Mayfield's discharge and July, 1986, provided the union with ample time to conduct an inquiry into the facts. The attorney apparently had to rely primarily on his client, the union, for the factual support for his claim. Prefiling investigation into the facts was reasonable because of the ample time between implementation of the work rules and discharge of Mayfield and the filing of the counterclaim and motion for summary judgment. Counsel for the union did not accept the case from another member of the bar or a forwarding attorney. As noted, the factual and legal issues are not complex, and minimal discovery was necessary.

Accordingly, the court finds that counsel for Local 1529 made a reasonable inquiry into the facts.

### B. *Inquiry into the Law.*

█ In deciding whether a reasonable inquiry into the law has been made, the court may consider how much time the attorney had to prepare the document, whether the document contained a plausible view of the law, whether the document is filed by an attorney or a *pro se* litigant, and the complexity of the legal and factual issues in question. *Thomas,* 812 F.2d at 988 & n. 1.

#### 1. The Union's Motion for Sanctions.

As noted, the work rules were implemented by the company in July, 1985. Mayfield was discharged in May, 1986. The complaint was filed in June, 1986, and the company's motion for summary judgment was filed in August, 1986. The court is of the opinion that Marshall Durbin had

ample time to prepare the documents in this case. Furthermore, as evidenced by the court's granting of plaintiff's motion for summary judgment, the court is of the opinion that plaintiff's view of the law was plausible. The complaint and the motion for summary judgment were not filed by a *pro se* litigant, and, as noted, the legal and factual issues in this action are not complex. Accordingly, the court is of the opinion that counsel's inquiry into the law was not in violation of rule 11.

2. The Company's Motion for Sanctions.

The union filed its answer, counterclaim, and motion for summary judgment in July, 1986. This was a year after implementation of the work rules and two months after the employee was discharged. The court is of the opinion that counsel for the union was provided ample time to prepare the documents in question. Although the court did not accept the position argued by the union, the answer, counterclaim, and motion for summary judgment contained a plausible view of the law. *See, e.g., Johnston-Tombigbee Furniture Mfg. Co. v. Local Union No. 2462*, 596 F.2d 126 (5th Cir.1979) (holding as arbitrable a dispute as to whether the discharge of an employee was supported by "just cause"). The documents at issue herein were not filed by a *pro se* litigant, and, as noted, the legal and factual issues were not complex. Accordingly, the court is of the opinion that counsel's inquiry into the law did not violate rule 11.

### C. *Whether the Action was Taken to Harass, Delay or Increase Costs.*

There is no evidence in the record to suggest that counsel for either party initiated or maintained this action to harass, delay, or increase unnecessarily the costs of litigation. The action taken by the parties was largely in conformance with the provisions contained in the collective bargaining agreement between the parties. No discovery was conducted, and the material facts were not in dispute. The plaintiff filed the complaint as it was permitted to do under the terms of the agreement. The union challenged certain acts of the company as it was entitled to do under the terms of the agreement. In sum, the court is of the opinion that neither party initiated or maintained this action to harass, delay, or increase the costs unnecessarily.

### D. *Reevaluation of Positions.*

The Fifth Circuit Court of Appeals has recently concluded that the inquiry required by rule 11 is not a one time only obligation. Counsel have a continuing obligation to review and reevaluate their positions as the case develops. *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987); *Southern Leasing Partners v. McMullan*, 801 F.2d 783, 788 (5th Cir.1986); *see also Woodfork v. Gavin*, 105 F.R.D. 100, 104 (N.D.Miss. 1985).

No discovery was taken in the action *sub judice*. The facts are undisputed, and both parties make plausible arguments in support of their positions. Both parties filed motions for summary judgment within two months from the time the complaint was filed. There is no evidence in the record to indicate that facts have been revealed which would cause either party to change its position in this litigation. Accordingly, the court is of the opinion that the parties have not failed to reevaluate their positions.

### III. SUMMARY.

In sum, the court concludes that the company's implementation of work rules is not arbitrable under the terms of the collective bargaining agreement. The court further concludes that the union's challenge to implementation of the work rules is untimely under the terms of the collective bargaining agreement. The court is further of the opinion that plaintiff's complaint in this action was timely filed within the provisions of the agreement. There is no genuine issue of material fact as to whether the discharge of Mayfield is arbitrable; the parties have agreed that it is arbitrable. Finally, the court is of the opinion that sanctions against the parties are unwarranted.

An order in conformance with this opinion shall issue.